IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN ANTHONY REYNOLDS,

        Petitioner,                  No. CIV S-04-1050 MCE DAD P

    vs.

SCOTT RAWER, Warden, et al.,

        Respondents.           <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on August 16, 1999, in the Butte County Superior Court on two counts of committing a lewd act upon a child, in violation of California Penal Code § 288(a).  He seeks relief on the grounds that: (1) his due process right to present a defense was violated when the trial court excluded a portion of the testimony of a defense expert witness; (2) his right to due process was violated by the admission of evidence of prior uncharged crimes; (3) his trial counsel rendered ineffective assistance; (4) his right to a fair trial was violated by the admission of "fabricated testimony" at the preliminary hearing; and (5) there was insufficient evidence to support his convictions.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

## I. The Facts Presented at Trial

In January 1999, Caisie and her son, K.C., were visiting their friends Debbie and her son, C.S.  C.S. and K.C. were playing together when Caisie overheard K.C. say to C.S., "If you put your penis on my butt, I will put mine on yours."  Caisie reacted "not very appropriately" and "popped" K.C. in the mouth.  But Caisie then asked K.C. why he would say something like that and where he had gotten that idea.  According to Caisie, K.C. told her that that was what "Dude [the defendant][2] had done to him . . . . [H]e put his penis on his butt."  Caisie then told K.C. that he had not done anything wrong, but that what defendant had done was wrong.

Caisie called the police and the following day took K.C. to the emergency room for a physical examination.  Dr. Paul Rumore examined K.C. in the emergency room.  But he found no physical evidence or psychological indicators of molestation.

An investigator from the district attorney's office, Rick West, participated in a Child Abuse Response Team (CART) interview of K.C., which was conducted by a child interview specialist.  At the interview, K.C. stated, "Dude put his penis where I go poop."  The CART interview was videotaped, but neither the videotape nor the transcripts were introduced into evidence.

On March 1, 1999, K.C. was examined by a nurse practitioner, Sally Vertolli, who was trained in sexual abuse cases. Caisie told Vertolli that K.C. had told her that "Dude" "had put his penis in his bottom."  But the exam revealed no physical complaints, symptomology, or behavioral changes frequently associated with molestation victims.  K.C.'s physical and genital examinations were normal.

Dr. Lisa Benaron, Vertolli's supervisor, reviewed Vertolli's report and agreed with the conclusion that K.C. had had a normal examination.  Dr. Benaron also reviewed the records from K.C.'s emergency room visit in January and found that those results were normal.  But Dr. Benaron indicated that injuries to this area heal rapidly and that a very small percentage of molest victims sustain injury to the anus.  Dr. Benaron also understood the medical history to reflect only that defendant had put his penis between

---

[1]  The following summary is drawn from the January 9, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-6, filed in this court as Exhibit C to respondents' Answer.

[2]  K.C. called defendant "Dude," and defendant called K.C. "Dude."  (K.C. did not call anyone else "Dude.")

K.C.'s butt cheeks, as opposed to inserting it in or penetrating his anus.  Accordingly, Dr. Benaron was not surprised that the results of the exam were normal.

K.C. testified at trial that defendant had given him "not okay" touches.  Defendant took his and K.C.'s clothes off, placed K.C. on his stomach, sat on K.C., and put his penis in K.C.'s bottom, and would stay still.  He did not use any lubricants and would stay there for about three seconds.  K.C. testified that defendant had done this more than once and described this as having been done during the day in the living room and at night in the bedroom under the covers.  K.C. remained consistent in this testimony on cross-examination.

The defense called Dr. Lee Stuart Coleman, a medical doctor, as an expert witness.  He testified that if an adult male sodomized a child of K.C.'s size, without lubrication, there would be "a very high likelihood of physical injuries to the child."  In addition, he testified that he would expect there to be pain, bleeding, bruising, and tearing noticeable after a single incident, and more so after repeated acts.  He acknowledged, however, that without penetration, the possibility of injury was much less likely.

## II.  Procedural Background for the Relevant Issues

Defendant was charged with two counts of committing a forcible lewd act upon a child.  (§ 288, subd. (b)(1).)  It was further alleged that in committing these offenses, defendant engaged in substantial sexual conduct with the victim.  (§ 1203.066, subd. (a) (8).)

A jury trial commenced on August 9, 1999.

On August 10, 1999, the trial court granted the prosecutor's motion to present evidence of defendant's prior sex offenses pursuant to Evidence Code section 1108.  The prosecution then introduced evidence that Caisie and her half sister had both been molested by defendant when they were six and seven years old.

During the trial, the trial court also held a foundational hearing regarding the proffered testimony of one of defendant's expert witnesses, Dr. Coleman.  The defense sought to have Dr. Coleman testify about "how an adult's method of questioning a child can influence the answers a child gives to those questions."

Following the foundational hearing, the trial court excluded this portion of Dr. Coleman's proposed testimony, because it would not assist the trier of fact.  "[W]e are talking about whether or not a little boy is telling the truth, and whether something was planted in his mind," which a jury could "divine as well as an expert."  The judge reasoned that once K.C. disclosed to his mother what had happened, "the cat [was] out of the bag" and the child would either

3

recant or remain consistent during interviews.  The court concluded that under these circumstances, the jury was fully capable of assessing K.C.'s credibility and that Dr. Coleman's "testimony would not assist the trier of fact."  In addition, the court determined that under Evidence Code section 352, admission of this testimony could confuse the issues because it would refer to matters that the jury had not heard, like the CART tape.  Finally, the court observed that "[i]f the original complaint of molest were generated by a question . . . asked by investigating officers, or the mother, or both, then the questioning . . . would be [the] genesis of the complaint of molest" and that would present "a different ballgame."

The jury found defendant not guilty of the two counts of forcible lewd acts upon a child (§ 288, subd. (b)(1), but convicted him of two counts of the lesser included offense of a lewd act upon a child.  (§ 288, subd. (a).)  The jury also found the allegation of substantial sexual conduct not true.  (§ 1203.066, subd. (a) (8).)

Defendant was sentenced to an aggregate term of eight years in state prison, and various fines and fees were imposed.

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

/////

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II.  Petitioner's Claims

A.  Testimony of Expert Witness

Petitioner's first claim is that his due process right to present a defense was violated by the trial court's exclusion of a portion of the testimony of Dr. Coleman.  Specifically, petitioner argues that he should have been allowed to introduce Dr. Coleman's testimony to the effect that K.C. was influenced by his interrogators to fabricate allegations against petitioner. (Brief in Support of Petition for Writ of Habeas Corpus (P&A) at 21.)  Petitioner states that Dr.

1  Coleman would have explained "how an adult's method of questioning a child can influence the

2  answers a child gives."  (Id. at 1, 21.)  Petitioner contends that this testimony was crucial to his

3  defense that K.C.'s testimony "had been influenced" and "was less than truthful due to

4  suggestive questions which had been presented to him by various adults."  (Pet. at 5; P&A at 23.)

5  Petitioner argues that the "defense testimony the court allowed related only to physical evidence

6  of sexual molestation; it did not address at all petitioner's theory [K.C.'s] testimony had been

7  influenced."  (P&A at 23.)  Petitioner contends that he was denied the right to "call the 'only'

8  witness who could explain on his behalf how [K.C.'s] testimony could have been influenced,

9  thus attacking the child's credibility."  (Id. at 26.)

10         The trial court record reflects that at the pretrial foundational hearing regarding

11  the proffered testimony of Dr. Coleman, Coleman testified that, in his opinion, there were

12  "certain factors that cause a child to be susceptible to adult questioning, and infer a suggestion of

13  what an answer should be."  (Reporter's Transcript on Appeal (RT) at 368.)  Dr. Coleman

14  believed that some of those factors were present in this case.  (Id.)  He explained that:

15         The main factors I would say is that there was indication that the
         first person to talk to the child on the subject had a certain point of
16         view, and a certain attitude and style which is a potential danger
         signal.

17
         It obviously doesn't tell you what the truth is, but it says it needs to
18         be paid attention to.  I am referring to the mother and some
         discrepancy to when, what was said, and to what happened when
19         she first talked to the child as one source, and what was said at a
         different source.

20
         So that was a critical area.  The next one would be the way the
21         child was interviewed, whether there was taping done or not, and
         the methodology of the interviewer.  The professional interviewers,
22         once they came, I think there was methodology which did not
         display a neutrality, which is so critical in those interviews if you
23         are trying to get the most reliable answers from the child.

24  (Id. at 368-69.)

25         Petitioner's counsel argued at the hearing that Dr. Coleman should be allowed to

26  testify "on the susceptibility of this child to adult suggestions that are contained in questions, and

6

1   in the way they are questioned."  (Id. at 384.)  Counsel contended that Dr. Coleman's testimony

2   "would help the jury to understand how somebody who is 4 years old at the time, 6 months or 8

3   months at the time could be led to certain things, or conclude that certain things that what mom,

4   or the investigator for the people, are looking for for him to say."  (Id. at 388.)  He argued that

5   Coleman's testimony was "essential in evaluating [K.C.'s] credibility."  (Id.)  As described

6   above, the trial court denied the defense request to offer Dr. Coleman's opinion regarding the

7   susceptibility of child witnesses to suggestion, finding that the issue was one of credibility which

8   the jury was qualified to evaluate without the aid of expert opinion.  (Id. at 389-93.)

9           The California Court of Appeal rejected petitioner's argument that the trial court's

10  exclusion of Dr. Coleman's testimony violated his Fourteenth Amendment right to due process.

11  The appellate court reasoned as follows:

12          In this case, the exclusion of Dr. Coleman's testimony on a child's
            susceptibility to suggestion did not preclude defendant from
13          presenting his defense that K.C.'s testimony was unreliable.  He
            thoroughly and effectively cross-examined K.C.  Defendant was
14          also allowed to litigate the competence of the investigation
            surrounding K.C.'s accusations.  He thoroughly cross-examined
15          the officer who interviewed K.C. and the medical personnel who
            examined him.  He chose not to enter the CART videotape into
16          evidence, but the court specifically ruled that he could.  He argued
            extensively to the jury that K.C. had made up much, if not all, of
17          the story of molestation, that Caisie's reaction to his statement and
            her relationship with defendant were the reasons K.C. made up his
18          story, and that the open-ended questions to K.C. led to flights of
            fancy in K.C.'s testimony.  In sum, defendant was allowed to
19          present his defense.

20  (Opinion at 10-11.)[3]

21  /////

22

23          [3] Petitioner also claimed on appeal that the exclusion of Dr. Coleman's testimony
    violated state law.  (Id. at 6-10.)  The California Court of Appeal rejected this argument on state
24  law grounds, essentially agreeing with the trial court's reasons for excluding the proffered
    testimony of Dr. Coleman.  (Id.)  As explained above, absent some federal constitutional
25  violation, a violation of state law does not provide a basis for federal habeas relief.  Estelle v.
    McGuire, 502 U.S. 62, 67-68 (1991).  Accordingly, petitioner is not entitled to relief from this
26  court on any claim that the trial court's evidentiary ruling violated state law.

                                            7

1        A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

2  relief only if it renders the state proceedings so fundamentally unfair as to violate due process.

3  Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78

4  (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  Criminal

5  defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense;

6  this right is "a fundamental element of due process of law."  Washington v. Texas, 388 U.S. 14,

7  19 (1967).  See also Crane v. Kentucky, 476 U.S. 683, 687, 690 (1986); California v. Trombetta,

8  467 U.S. 479, 485 (1984); Webb v. Texas, 409 U.S. 95, 98 (1972).  However, the constitutional

9  right to present a defense is not absolute.  Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir.

10  2003).  "Even relevant and reliable evidence can be excluded when the state interest is strong."

11  Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983).  Thus,

> [w]here evidence has been excluded pursuant to a state evidentiary
> law, we use a balancing test:  In weighing the importance of
> evidence offered by a defendant against the state's interest in
> exclusion, the court should consider the probative value of the
> evidence on the central issue; its reliability; whether it is capable of
> evaluation by the trier of fact; whether it is the sole evidence on the
> issue or merely cumulative; and whether it constitutes a major part
> of the attempted defense. A court must also consider the purpose of
> the [evidentiary] rule; its importance; how well the rule
> implements its purpose; and how well the purpose applies to the
> case at hand. The court must give due weight to the substantial
> state interest in preserving orderly trials, in judicial efficiency, and
> in excluding unreliable or prejudicial evidence.

19  Alcala, 334 F.3d at 877 (quoting Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)).  See also

20  Drayden, 232 F. 3d at 711.  Thus, a state law justification for exclusion of evidence does not

21  abridge a criminal defendant's right to present a defense unless it is "arbitrary or

22  disproportionate" and "infringe[s] upon a weighty interest of the accused."  United States v.

23  Scheffer, 523 U.S. 303, 308 (1998).  See also Crane, 476 U.S. at 689-91 (discussing the

24  tension between the discretion of state courts to exclude evidence at trial and the federal

25  constitutional right to "present a complete defense"); Greene v. Lambert, 288 F.3d 1081, 1090

26  (9th Cir. 2002).  Moreover, a criminal defendant "does not have an unfettered right to offer

1    [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of

2    evidence." Montana v. Egeloff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400,

3    410 (1988)). "A habeas petitioner bears a heavy burden in showing a due process violation based

4    on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

5           Applying these principles, this court is persuaded that the exclusion of Dr.

6    Coleman's testimony regarding the susceptibility of child witnesses to suggestion did not render

7    petitioner's trial fundamentally unfair or prevent him from presenting his defense.  Although

8    petitioner was unable to introduce Dr. Coleman's testimony as additional support for his defense

9    that K.C. made up the molestation allegations, he was not precluded from presenting this

10   defense.  As described above, petitioner's counsel introduced evidence, such as the testimony of

11   physicians who examined K.C., casting doubt on whether any sexual molestation ever occurred.

12   Petitioner "cross-examined the officer who interviewed K.C. and the medical personnel who

13   examined him" and "argued extensively to the jury that K.C. had made up much, if not all, of the

14   story of molestation."  (Opinion at 11.)  Counsel also argued that K.C.'s testimony was suggested

15   to him by Caisie's reaction, behavior and the way he was interrogated with leading questions

16   from the prosecutor.  (Id. at 489-505, 523.)  Indeed, as a result of the evidence and arguments

17   offered by the defense, the jury acquitted petitioner of the most serious charges levied against

18   him, found the enhancement allegation not to be true and convicted him only of the lesser

19   included offenses.

20          The conclusion of the state appellate court that petitioner's right to due process

21   was not violated by the exclusion of Dr. Coleman's testimony regarding K.C.'s possible

22   susceptibility to suggestion is not contrary to or an unreasonable application of the federal due

23   process principles discussed above.  Accordingly, petitioner is not entitled to relief on this claim.

24          B.  Evidence of Prior Uncharged Crimes

25          Petitioner's next claim is that the trial court violated his right to due process when

26   it admitted evidence of his prior uncharged sex crimes against Caisie and her half-sister Cali

1   under California Evidence Code § 1108 to show "propensity."  (Pet. at 5.)  The California Court

2   of Appeal rejected petitioner's argument in this regard on the grounds that this issue had been

3   decided adversely to petitioner by the California Supreme Court in People v. Falsetta, 21 Cal. 4th

4   903 (1999).[4]  (Opinion at 11-12.)

5           The United States Supreme Court "has never expressly held that it violates due

6   process to admit other crimes evidence for the purpose of showing conduct in conformity

7   therewith, or that it violates due process to admit other crimes evidence for other purposes

8   without an instruction limiting the jury's consideration of the evidence to such purposes."

9   Garceau v. Woodford, 275 F. 3d 769, 774 (9th Cir. 2001), overruled on other grounds by

10  Woodford v. Garceau, 538 U.S. 202 (2003).  In fact, the Supreme Court has expressly left open

11  this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue,

12  we express no opinion on whether a state law would violate the Due Process Clause if it

13  permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").

14  Accordingly, contrary to petitioner's assertion, it is not clearly established federal law that the

15  admission of propensity evidence violates due process.  Petitioner has therefore failed to

16  demonstrate that the California Courts' rejection of his federal due process claim was contrary to

17  or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1); see

18  ─────────────────────────

19       [4]  California Evidence Code § 1108 "creates an exception to the general ban on propensity
     evidence, so that evidence of prior sexual misconduct may be presented to the jury to
20   demonstrate propensity to commit the crime charged, provided that the prejudicial value of that
     evidence does not substantially outweigh its probative value."  Schroeder v. Tilton, 493 F.3d
21   1083, 1087 (9th Cir. 2007).  Pursuant to § 1108, evidence was introduced at petitioner's trial that
     petitioner had committed sex crimes against Caisie and her half-sister when they were children
22   and that he had admitted these crimes to an investigator.  (RT at 148-60, 166-71, 215-17.)
     In Falsetta, the California Supreme Court explained that § 1108 did not violate the Due Process
23   Clause because "the policy considerations favoring the exclusion of evidence of uncharged
     sexual offenses are outweighed in criminal sexual offense cases by the policy considerations
24   favoring the admission of such evidence."  Falsetta, 1 Cal. 4th at 911-12 (quoting People v.
     Fitch, 55 Cal. App. 4th 172, 181-82 (1997)).  A similar federal statute has also been upheld
25   against a due process challenge.  See United States v. LeMay, 260 F.3d 1018, 1031 (9th Cir.
     2001) (Fed. R. Evid. 414, permitting admission of evidence of similar crimes in child
26   molestation cases and under which the test for balancing probative value and prejudicial effect
     remains applicable, does not violate the Due Process Clause).

1    also Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's claim

2    that the introduction of propensity evidence violated his due process rights under the Fourteenth

3    Amendment because "the right [petitioner] asserts has not been clearly established by the

4    Supreme Court, as required by AEDPA"); Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir.

5    2002) (habeas relief not warranted unless due process violation was "clearly established" under

6    federal law); Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001) (same). Accordingly,

7    petitioner is not entitled to relief on his due process claim.

8                          C.   Testimony at Preliminary Hearing

9            Petitioner's next claim is that his right to a fair trial was violated by the

10   prosecution's presentation of "fabricated testimony" at the preliminary hearing.  (Pet. at page

11   marked "A".)  Specifically, petitioner contends that Butte County investigator Richard West

12   testified at the preliminary hearing that the victim told him petitioner used lotion during the

13   molestation incidents, whereas the victim denied at trial that any lotion was used.  (Id.; Clerk's

14   Transcript (CT) at 32; RT at 98.)  Petitioner argues that West's testimony in this regard "was a

15   blatant fabrication designed to secure an indictment."[5]  (P&A at 56.)

16           A conviction obtained using knowingly perjured testimony violates due process.

17   Mooney v. Holohan, 294 U.S. 103, 112 (1935).  It is an established tenet of the Due Process

18   Clause that 'the deliberate deception of the court by the presentation of false evidence is

19   incompatible with the rudimentary demands of justice.'"  United States v. Rewald, 889 F.2d 836,

20   860 (9th Cir. 1989) (quoting United States v. Endicott, 869 F.2d 452, 455 (9th Cir. 1989)).  "[A]

21   conviction obtained by the knowing use of perjured testimony must be set aside if there is any

22   reasonable likelihood that the false testimony could have affected the jury's verdict."  United

23   States v. Bagley, 473 U.S. 667, 680 n.9 (1985). See also Morales v. Woodford, 388 F.3d 1159,

24

25           [5]  Petitioner's reference to an indictment was apparently made in error.  The state court
26   record reflects that following a preliminary examination, petitioner was held to answer and on
     May 21, 1999 an Information was filed upon which petitioner was arraigned.  (CT 18-21.)

1179 (9th Cir. 2004) ("The due process requirement voids a conviction where the false evidence

is 'known to be such by representatives of the State.'") (quoting Napue v. Illinois, 360 U.S. 264,

269 (1959)).  This rule applies even where the false testimony goes only to the credibility of the

witness.  Napue, 360 U.S. at 269; Jackson v. Brown, 513 F.3d 1057, 1076 (9th Cir. 2008);

Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).  There are two components to

establishing a claim for relief based on the introduction of perjured testimony.  First, the moving

party must establish that the testimony was false.  United States v. Polizzi, 801 F.2d 1543, 1549-

50 (9th Cir. 1986).  Second, the movant must demonstrate that the prosecution knowingly used

the perjured testimony.  Id.  Mere speculation regarding these factors is insufficient to meet

movant's burden.  United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).

        In the context of a federal prisoner's petition for relief under 28 U.S.C. § 2255 the

Ninth Circuit Court of Appeals has held that proof of knowledge by the prosecution is required to

support a claim of denial of due process based upon the admission of prejudicial perjured

testimony in a criminal trial.  See Morales, 336 F.3d at 1151 ("The essence of the due process

violation is misconduct by the government, not merely perjury by a witness."); Marcella v.

United States, 344 F.2d 876, 880 (9th Cir. 1965) ("Before a sentence may be vacated on the

ground of perjured testimony, the movant must show that the testimony was perjured and that the

prosecuting officials knew at the time such testimony was used that it was perjured."); Taylor v.

United States, 221 F.2d 228 (9th Cir. 1955).  See also Ortiz v. Stewart, 149 F.3d 923, 936 (9th

Cir. 1998) ("If a prosecutor knowingly uses perjured testimony or knowingly fails to disclose that

testimony is false, the conviction must be set aside if there is any reasonable likelihood that the

false testimony could have affected the jury verdict.").

        Petitioner has failed to establish that the prosecutor knew or should have known

that the preliminary hearing testimony of investigator West was false.  Mere speculation on this

point is not sufficient to support a claim based on the knowing presentation of false evidence.

For this reason alone, petitioner is not entitled to relief on this claim.  This court also notes that

although investigator West was called as a defense witness at petitioner's trial, he was not asked

any questions by any party about the use of lotion during the alleged incidents of molestation.

(See RT at 330-42.)  Accordingly, there is no likelihood that any allegedly false testimony on this

subject at petitioner's preliminary hearing would have affected the outcome of this case or the

overall fairness of petitioner's trial.[6]  For these reasons, petitioner is not entitled to relief on his

claim regarding the use of "false" testimony.

D.  Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel rendered ineffective assistance as a result of

numerous errors and omissions.  After setting forth the applicable legal principles, the court will

evaluate these claims in turn below.[7]

1.  Legal Standards

The Sixth Amendment guarantees the effective assistance of counsel.  The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

counsel, a petitioner must first show that, considering all the circumstances, counsel's

performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

petitioner identifies the acts or omissions that are alleged not to have been the result of

reasonable professional judgment, the court must determine whether, in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally

---

[6]  Petitioner argues that investigator West's testimony at the preliminary hearing "directly affected petitioner's due process right as they were instrumental in influencing the decision to indict."  (Traverse at 38.)  However, there is no evidence that petitioner would not have been held to answer on the charges if investigator West had not made the statements about the lotion. Petitioner's mere speculation on this point is not persuasive with respect to his due process claim.

[7]  Petitioner originally included a claim that his appellate counsel rendered ineffective assistance.  However, in the traverse petitioner states that he "hereby vacates this claim." (Traverse at 5.)  Accordingly, this court will not address a claim that petitioner's appellate counsel rendered ineffective assistance.

competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

694.  A reasonable probability is "a probability sufficient to undermine confidence in the

outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

(9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

(9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

Defense counsel has a "duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at

691.  "This includes a duty to . . . investigate and introduce into evidence records that

demonstrate factual innocence, or that raise sufficient doubt on that question to undermine

confidence in the verdict."  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citing Hart v.

Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999)).   In this regard, it has been recognized that "the

adversarial process will not function normally unless the defense team has done a proper

investigation."  Siripongs v. Calderon (Siripongs II), 133 F.3d 732, 734 (9th Cir. 1998) (citing

Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)).  Therefore, counsel must, "at a minimum,

conduct a reasonable investigation enabling him to make informed decisions about how best to

represent his client."  Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting

Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted).

On the other hand, where an attorney has consciously decided not to conduct further investigation

because of reasonable tactical evaluations, his or her performance is not constitutionally

deficient.  See Siripongs II, 133 F.3d at 734; Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

1998); Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).  "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'"  Wiggins, 539 U.S. at 533 (quoting Strickland, 466 U.S. at 691).  See also Kimmelman, 477 U.S. at 385 (counsel "neither investigated, nor made a reasonable decision not to investigate"); Babbitt, 151 F.3d at 1173-74.  A reviewing court must "examine the reasonableness of counsel's conduct 'as of the time of counsel's conduct.'"  United States v. Chambers, 918 F.2d 1455, 1461 (9th Cir. 1990) (quoting Strickland, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'"  Bragg, 242 F.3d at 1088 (quoting Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986)).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

## 2.  Failure to Present a Defense

Petitioner claims that his trial counsel rendered ineffective assistance by failing to utilize information given to him by petitioner to formulate the defense case.  Specifically, petitioner states that he informed counsel that: (1) K.C. was actually being molested by his friend C.S. and not by petitioner and that C.S. may have been abused himself; (2) Caisie was motivated by greed (a desire to make money from petitioner's real estate transactions) and drug abuse to falsely accuse petitioner; (3) Caisie and Cali were motivated to falsely accuse petitioner by revenge stemming from petitioner's past molestation of them; (4) K.C.'s statement to Caisie that petitioner had engaged in improper acts actually referred to a conversation petitioner had with K.C. wherein he advised K.C. not to engage in homosexual acts with C.S., and did not refer to any acts actually perpetrated by petitioner against K.C.; and (5) K.C. was coerced by Cali, Caisie, and police officials to falsely accuse petitioner.  (P&A at 35-38.)  Petitioner contends that,

instead of presenting a defense utilizing these facts, counsel failed to communicate with petitioner, failed to apprise petitioner of his trial strategy and relied solely on the testimony of Dr. Coleman in fashioning a defense to the charges.  (Id. at 38-39.)  Petitioner further alleges that "when the court denied Dr. Coleman permission to testify, counsel had no backup defense strategy planned and presented a very poor case at trial, using none of the information petitioner had supplied him with."  (Id. at 39.)  Petitioner argues that counsel "prejudiced petitioner by not supplying jury with facts that in all probability could have resulted in an acquittal."  (Id. at 40.)

When assessing a habeas claim of ineffective assistance, counsel's tactical decisions are "virtually unchallengeable."  Strickland, 466 U.S. at 687.  Under the circumstances of this case, counsel's tactical decisions with regard to which evidence to introduce in support of his defense were well within the wide range of professional assistance.  In particular, counsel's decision not to attempt to blame the molestation on K.C.'s young friend, C.S., and not to focus on petitioner's conversation with K.C. about homosexual acts with C.S. was a tactical decision. Of course, counsel, and not the client, is entrusted with trial strategy.  See Taylor v. Illinois, 484 U. S. 400, 418 (1988) ("the lawyer has--and must have--full authority to manage the conduct of the trial"); New York v. Hill, 528 U.S. 110, 114 (2000); United States v. Wadsworth, 830 F. 2d 1500, 1509 (9th Cir. 1987) ("appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defense") (citing Henry v. Mississippi, 379 U.S. 443 (1965)). Accordingly, petitioner's counsel did not render ineffective assistance merely because he declined to follow petitioner's suggested defense strategy.  It is important to note in this regard that counsel's trial strategy and performance resulted in an acquittal for petitioner on the most serious charges levied against him and in a jury finding of "not true" with the regard to the allegation of substantial sexual conduct.  This is a strong indication that counsel's strategy was indeed effective.

Petitioner's allegations regarding the motivation of Caisie and Cali to fabricate are unsubstantiated and conclusory and do not establish that trial counsel was deficient in failing to

introduce evidence of possible sources of bias.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  In the absence of any evidence to the contrary, there is a strong presumption that counsel's performance was adequate.  Kimmelman, 477 U.S. at 381.  Moreover, the jury heard testimony that petitioner had previously committed lewd acts upon Caisie and Cali when they were children (RT at 148-71; 215-17) and was also instructed to consider the existence of bias or other motive in evaluating the credibility of all witnesses.  (CT at 85.)  Thus, the jury at petitioner's trial was fully apprised of the information it needed to assess the credibility of Caisie and Cali and their possible motives to fabricate allegations against petitioner.  Accordingly, petitioner has not established any prejudice flowing from his trial counsel's allegedly deficient performance in this regard.

For all of these reasons, petitioner is not entitled to relief with respect to his claim of ineffective assistance of trial counsel.

3.  Failure to Investigate

Petitioner also claims that, although his trial attorney hired an investigator, "no investigation was ever done and no investigative report was ever submitted to petitioner."  (P&A at 40.)  Petitioner contends that his trial counsel failed to investigate all of the facts that petitioner believes should have supported or formed the basis of his defense.[8]  Petitioner argues that his

---

[8] Petitioner describes the proposed areas of investigation as follows:

Caisie's drug use immediately prior to incident that led to accusation.
The possibility of [C.S.] being the victim of sexual abuse.
Caisie's sister Cali's role in coersing (sic) [K.C.] to make false accusations.
Statements made by Caisie, "I'm going to make money off of this."
Caisie contacting Robert Zuver of Winston Realty, and demanding property profits.
Caisie's two acts of welfare fraud.

(P&A at 40.)

trial counsel should have "conducted his own investigation into the medical evidence or lack

thereof" and possibly called a "medical expert witness." (Id. at 41.)  In short, petitioner asserts

that his trial attorney failed "to investigate any aspect of this case." (Id.)

Petitioner's unsupported assertion that his trial counsel failed to conduct sufficient investigation

prior to his trial does not warrant the granting of habeas relief.  Jones, 66 F.3d at 204; James, 24

F.3d at 26.  First, counsel's decision not to conduct investigation into the areas now suggested by

petitioner does not, without more, constitute ineffective assistance.  Siripongs, 133 F.3d at 734

(where an attorney has consciously decided not to conduct further investigation because of

reasonable tactical evaluations, his or her performance is not constitutionally deficient);

Strickland, 466 U.S. at 691 (a decision not to investigate "must be directly assessed for

reasonableness in all the circumstances").  Most importantly, petitioner has failed to establish

prejudice with respect to this claim in that he has failed to present any evidence suggesting that

absent counsel's failure to investigate the result of the proceedings would have been different.

Id. at 694.

   For these reasons, petitioner is not entitled to relief on this claim.

     4.  Failure to Interview, Depose and Present Witnesses

   Petitioner claims that his trial counsel rendered ineffective assistance by failing to

interview and present the testimony of several witnesses who would have allegedly substantiated

the theory of defense, described above, that petitioner wanted his counsel to present to the jury.[9]

(P&A at 43.)  In his traverse, petitioner describes what these witnesses would have testified to if

they had been called to the stand at his trial.  (Traverse at 29-30.)  However, petitioner concedes

that he cannot substantiate his descriptions of the testimony that was not presented at his trial

because he is incarcerated and the witnesses are "now hostile to the petitioner." (Id. at 30.)

---

[9]  Petitioner suggests that counsel improperly "failed to interview and depose: Laura
Lukes, Tim Reynolds, Robert Zuver, Debbie Schuetz, Cameron Schuetz, and Debbie Schuetz's
boyfriend at the time." (P&A at 43.)

First, the court notes that petitioner's trial counsel listed a number of these persons as potential defense witnesses at trial but apparently decided not to call them.  (See RT at 10-11.)  Counsel's tactical decision in this regard does not constitute ineffective assistance. Strickland, 466 U.S. at 687.  Even assuming arguendo that counsel's failure to investigate and present these witnesses was outside "the wide range of professionally competent assistance," petitioner has failed to demonstrate prejudice.  Petitioner's speculation regarding what these prospective witnesses would have testified to is insufficient for this purpose.  See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (ineffective assistance claim based on an alleged failure to investigate witness rejected where petitioner did not present an affidavit from witness demonstrating that he would have provided testimony helpful to the defense); Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim rejected where he presented no evidence concerning what counsel would have found had he investigated further, or what lengthier preparation would have accomplished); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance based upon counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would have testified).[10]  Accordingly, petitioner is not entitled to habeas relief with respect to this claim.

### 5.  Failure to Object to Prosecutor's Questions Posed to the Victim

Petitioner claims that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's leading questions posed to K.C.  (P&A at 44.)  In this regard, he argues that "in allowing prosecution to continue to lead [K.C.] in his testimony, counsel allowed prosecution to, in effect, create the testimony that was more in favor of specific goals."  (Id.)
/////

---

[10]  On November 24, 2004, petitioner filed a request for an evidentiary hearing in this court for the purpose of discovering what the various perspective witnesses would have testified to had they been interviewed by trial counsel prior to trial.  Petitioner's motion was denied on the basis that he had neither made a sufficient showing nor satisfied the requirements justifying an evidentiary hearing as set forth in 28 U.S.C. § 2254(e)(2).

1      Petitioner has failed to demonstrate either deficient performance on the part of his

2   trial counsel or prejudice in connection with this claim.  With respect to deficient performance,

3   petitioner has failed to show that the prosecutor's questioning of K.C. was improper.  See Cal.

4   Evid. Code § 767(b) ("The court may, in the interests of justice permit a leading question to be

5   asked of a child under 10 years of age").  Trial counsel's failure to make a meritless objection on

6   the ground that the prosecutor was using leading questions in the direct examination of K.C. does

7   not constitute ineffective assistance.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000)

8   (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rupe v. Wood, 93 F.3d

9   1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient

10  performance").

11      Failure to object at trial to leading questions is generally considered a tactical

12  decision, particularly where a child witness is concerned.  Petitioner has failed to show that any

13  of K.C.'s testimony would have been inadmissible if elicited through rephrased non-leading

14  questions that the prosecutor would have asked had his counsel objected and the objection been

15  sustained.  Thus, there is no evidence that the result of the proceedings would have been any

16  different if petitioner's counsel had repeatedly objected to the prosecutor's leading questions

17  posed to the child victim in this case.  Indeed, any such trial tactic by defense counsel may well

18  have engendered more sympathy for the victim.  There is certainly no evidence that such a tactic

19  would have resulted in significantly different trial testimony.  Finally, as noted by respondent, in

20  his closing argument petitioner's counsel pointed out to the jury that the prosecutor's questions to

21  K.C. were leading and that the testimony was suspect as a result.  (See e.g., RT at 489-500.)

22  Accordingly, trial counsel's performance was not deficient with respect to his attack on the

23  credibility of K.C.'s testimony.

24      For the reasons described above, petitioner is not entitled to relief on this claim of

25  ineffective assistance of trial counsel.

26  /////

20

1        6.  Failure to Cross-Examine

2            Petitioner's next claim is that his trial counsel rendered ineffective assistance by

3   failing to conduct effective cross-examination.  First, he faults his trial counsel for failing to

4   question Caisie about improbable statements made by K.C. during his testimony describing

5   conversations between Caisie and K.C.  (P&A at 45-46.)  Petitioner argues that counsel's failure

6   to "verify this testimony with Caisie on cross-examination" deprived him of the opportunity to

7   show "that this conversation never took place and that [K.C.] was not telling the truth."  (Id.)

8   Second, petitioner complains that K.C. was not asked to describe the two acts of sodomy with

9   which petitioner was charged, but was only asked to describe one act of sodomy occurring on one

10  occasion in petitioner's residence.  (Id. at 46.)  Petitioner argues that "this oversight by defense

11  counsel allowed prosecution to convict on two counts, when in fact only one visit-incident was

12  described."  (Id.)

13          Petitioner has failed to demonstrate prejudice with respect to these claims.

14  Petitioner has presented no evidence that Caisie would have disputed K.C.'s testimony or that

15  K.C. would have testified that petitioner did not commit two acts of molestation.  Petitioner's

16  pure speculation as to how these witnesses would have testified upon further cross-examination

17  does not provide a sufficient basis for these claims.  In addition, a review of the record reflects

18  that trial counsel's cross-examination of Caisie and K.C. was thorough and competent.  In

19  particular, K.C. testified to two acts of molestation and was cross-examined by petitioner's

20  counsel with respect to those alleged acts.  (See RT at 95, 100, 105-23.)

21          This court concludes that petitioner's trial counsel did not render ineffective

22  assistance by failing to thoroughly cross-examine K.C. and Caisie.  Accordingly, petitioner is not

23  entitled to relief on this claim.

24        7.  Failure to Impeach Testimony

25          Petitioner's next claim is that his trial counsel rendered ineffective assistance by

26  failing to question investigator West about his false testimony at the preliminary hearing,

described above, to the effect that K.C. told him petitioner used lotion during the molestation

incidents.  Counsel's tactical decision to avoid this area of questioning is not unreasonable and

does not constitute deficient performance.  As noted by respondent, testimony that lotion was

used may have supported the prosecution theory that petitioner committed sodomy and not

simply a lewd act.  Further, petitioner has failed to establish that his counsel's highlighting of

West's preliminary hearing testimony would have resulted in a different outcome at trial.  For

these reasons, petitioner is not entitled to relief on this claim.

### 8.  Failure to Raise Issues

Petitioner argues that his trial counsel rendered ineffective assistance by failing to

"expound on key issues in [K.C.'s] testimony."  (P&A at 47.)  Specifically, petitioner contends

that counsel should have: (1) impeached K.C.'s testimony that petitioner sat on his back because,

if petitioner had done this, K.C. would have testified that he "couldn't breathe," instead of

testifying that "it hurt because [petitioner] had a bony bottom;" (2) established through additional

testimony that K.C. was not physically capable of unlocking petitioner's truck and getting into it,

as he testified; and (3) established that K.C. never saw petitioner naked, as K.C. testified, by

pointing out the implausibility of some of K.C.'s testimony in this regard.  (Id. at 48.)  Petitioner

alleges that if his counsel had conducted the suggested questioning, it would "show the jury that

[K.C.'s] testimony was untrue."  (Id. at 49; Traverse at 32.)

Petitioner has failed to demonstrate prejudice with respect to this claim.  In this

regard he has failed to present any evidence suggesting a "reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  Accordingly, petitioner is not entitled to relief.

### 9.  Failure to Provide Witnesses with Needed Information

Petitioner claims that his trial counsel rendered ineffective assistance because he

failed to provide defense witness Dr. Coleman with "a complete set of facts concerning the

petitioner's case."  (P&A at 49.)  Petitioner appears to be claiming that Dr. Coleman mistakenly

believed that Caisie actually observed an act of sexual molestation, when in reality she simply

heard K.C. tell the other child, C.S., that "if you put your penis on my butt, I will put mine on

yours," and observed another incident where K.C. and C.S. were "in the apartment with their

pants down." (Traverse at 33.)  Petitioner contends that "this misconception of Dr. Coleman's

was due to the fact that the Defense Counsel failed to supply him with all of the needed

information of the case which led to his exclusion as an expert witness, which denied petitioner

his right to present evidence in his defense." (Id.)

This vague and conclusory claim cannot support federal habeas corpus relief.

Jones, 66 F.3d at 204; James, 24 F.3d at 26.  Petitioner has failed to substantiate the basis for this

claim and has clearly failed to establish that trial counsel's performance in preparing Dr.

Coleman resulted in prejudice to petitioner's defense.  Accordingly, petitioner is not entitled to

relief on this claim.

10.  Jury Selection Error

Petitioner's next claim is that his trial counsel improperly allowed a juror who

was a "close personal friend" of the District Attorney to remain on the jury.  (P&A at 50.)

Petitioner argues that "it is highly probable that this individual was indeed prejudiced against

petitioner and that he was a negative influence on the jury." (Id.)  However, in the traverse

petitioner concedes that "with no access to the jurys' minutes in chambers, petitioner is in no

position to prove that this juror had a negative effect on the jury." (Traverse at 33.)

The transcript of the jury voir dire conducted before the trial court in this case has

not been presented by the parties as part of the record before this court.  However, even assuming

arguendo that one of the jurors was a friend of the District Attorney, petitioner has failed to

demonstrate prejudice with respect to this claim.  "Establishing Strickland prejudice in the

context of juror selection requires a showing that, as a result of trial counsel's failure to exercise

peremptory challenges, the jury panel contained at least one juror who was biased." Davis v.

Woodford, 384 F.3d 628, 643 (9th Cir. 2004) (citing United States v. Quintero-Barraza, 78 F.3d

1344, 1349 (9th Cir. 1995)).  The relevant test for determining whether a juror is biased is "whether the juror[ ] ... had such fixed opinions that [he] could not judge impartially the guilt of the defendant."  Patton v. Yount, 467 U.S. 1025, 1035 (1984).  See also Davis, 384 F.3d at 642-43; Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007).

Petitioner has presented this court with no evidence suggesting that any of the jurors in his case had fixed opinions with respect to any subject or entertained any bias against him which would have precluded their impartial service on the jury.  Further, there is no indication in the record that the result of petitioner's trial would have been different if defense counsel had exercised a challenge against the juror alluded to by petitioner.  Accordingly, petitioner is not entitled to relief on this claim.

11.  Cumulative Effect of Errors

Finally, petitioner claims that the cumulative effect of his trial counsel's errors, described above, constitute ineffective assistance of counsel.

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  This court has addressed each of petitioner's claims of ineffective assistance of trial counsel and has concluded that no error of constitutional magnitude occurred.  This court also concludes that the alleged errors of trial counsel, even when considered together, did not render petitioner's trial fundamentally unfair.  See Hunt v. Smith, 856 F. Supp. 251, 258 (D. Md. 1994) ("[t]he fact that many claims of counsel error are pressed does not alter fundamental math - a string of zeros still adds up to zero."), aff'd, 57 F.3d 1327 (4th Cir. 1995).  Accordingly, petitioner is not entitled to relief on this claim.

/////

1          E.  Sufficiency of the Evidence

2          Petitioner's final claim is that the evidence against him was insufficient to support

3    his convictions because the only evidence of "sexual molestation" was "the testimony of a small

4    child, which, if defense witness Dr. Lee Coleman had been allowed to testify in petitioner's

5    behalf, would have been shown to be suspect, and the inflammatory testimony of [Caisie and her

6    half-sister] which was presented in such a way as to circumvent the fact that there was no

7    evidence of any crime."  (Pet. at page marked "B.")

8          The Due Process Clause of the Fourteenth Amendment "protects the accused

9    against conviction except upon proof beyond a reasonable doubt of every fact necessary to

10   constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

11   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

12   favorable to the prosecution, any rational trier of fact could have found the essential elements of

13   the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

14   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988).  "[T]he dispositive question under

15   Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

16   reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

17   U.S. at 318).  A petitioner seeking federal habeas corpus relief  "faces a heavy burden when

18   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

19   process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order

20   to grant the writ, the federal habeas court must find that the decision of the state court reflected

21   an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

22          The court must review the entire record when the sufficiency of the evidence is

23   challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

24   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

25   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

26   reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

1  fact could draw conflicting inferences from the evidence, the court in its review will assign the

2  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

3  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

4  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

5  Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a

6  reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors

7  reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court

8  determines sufficiency of the evidence in reference to the substantive elements of the criminal

9  offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

10         After reviewing the record, this court concludes that there was sufficient evidence

11  introduced at petitioner's trial to establish beyond a reasonable doubt that he committed lewd

12  acts upon K.C.  Petitioner was convicted based largely on the testimony of the young boy, K.C.,

13  which the jury apparently believed.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under

14  Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review").

15  Indeed in his closing argument to the jury, the prosecutor emphasized that the prosecution's case

16  against petitioner relied primarily on the testimony of the five year old boy himself.  (RT at 465.)

17  The fact that K.C. was a child, or that there may have been evidence that petitioner believes casts

18  some degree of doubt on K.C.'s testimony, is not dispositive of the issue.  Notwithstanding any

19  such evidence, there was clearly substantial evidence from which a reasonable trier of fact could

20  have found beyond a reasonable doubt that petitioner was guilty of the crimes charged against

21  him.  Because there was substantial evidence presented at trial to support petitioner's conviction

22  on these charges, the state court's rejection of petitioner's arguments on this point was not

23  "objectively unreasonable."  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).  See also 28 U.S.C.

24  § 2254(d)(1).  Accordingly, petitioner is not entitled to relief on his claim challenging the

25  sufficiency of the evidence upon which he was convicted.

26  /////

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 13, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
reynolds1050.hc

27